<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BELAL SHAMMOUT**,<br><br>                    Plaintiff,<br><br>v.<br><br>**MSX INTERNATIONAL RNS, LLC**, *et al.*,<br><br>                    Defendants. | Civil Action No. 23-21563 (ZNQ) (RLS)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Defendant MSX International RNS, LLC's ("Defendant" or "MSXI") Motion to Compel Arbitration and Stay Proceedings (the "Motion," ECF No. 20.) Plaintiff Belal Shammout ("Plaintiff") opposed the Motion and filed a Cross-Motion for Attorney's Fees ("Cross-Motion," ECF No. 25.) Defendant replied. ("Reply," ECF No. 28.) Plaintiff filed a Sur-Reply with leave of Court. ("Sur-reply," ECF No. 32.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion to Compel Arbitration and Stay Proceedings and DENY Plaintiff's Cross-Motion for Attorney's Fees.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

   **A.     Factual Background**

Plaintiff is a former employee of MSXI and began working at the company on or about March 1, 2021. (ECF No. 1-1, Compl. ¶13.) Plaintiff served as a Senior Automotive Technician

with MSXI until his discharge on September 26, 2022. (*Id.* ¶¶13, 50). At the start of his employment, Plaintiff completed new-hire paperwork electronically using Defendant's E-Wizard onboarding process ("eWizard"). (ECF No. 20-3, Ex. A., David Roraff Dep., 13:18-23.) Through eWizard, Plaintiff was asked to click and sign certain forms, which were presented to him individually on the platform. (*Id.* at 26:20-27:20.) As part of this new-hire paperwork, Plaintiff completed Defendant's Dispute Resolution Policy ("Arbitration Agreement), in which Plaintiff individually acknowledged and agreed to submit disputes to binding mediation and arbitration. (*See* ECF No. 20-2, Ex. B. ("Arbitration Agreement").) The Arbitration Agreement provides in relevant part:

> Under this policy, which is a condition of continued employment and binding upon the Company and the employee, all claims and disputes a current or former non-represented employee within the United States might have arising out of the employee's employment or termination, which are not resolved through the Company's Employee Issue Resolution Procedure and other normal human resources channels, shall be resolved through mediation and, if necessary, binding arbitration. The mediation and arbitration will be conducted by a neutral third party, the American Arbitration Association.
>
> CLAIMS COVERED BY THIS POLICY
>
> The disputes covered by this policy include any claim under applicable State or Federal law a current or former employee within the United States might have against the Company including, for example, all claims for: . . . all forms of unlawful discrimination including, but not limited to race, color, sex, religion, national origin, disability, marital status, protected physical characteristics, or age; . . . violation of any Federal, State or other governmental law, statute, regulation or ordinance; and, any other matters arising under common or statutory law. . . . It is the intent to submit to mediation and arbitration to the fullest extent permitted by law all disputes an employee might have against the Company and any of its subsidiaries, divisions, affiliates, officers, directors, employees, and agents. Because this policy promotes mediation and arbitration as the exclusive remedy for claims covered by this policy, the Company and the employee agree to be bound by those laws best

>promoting the enforceability of mediation and arbitration agreements, including the Federal Arbitration Act, Federal common law, and any applicable state laws promoting arbitration.

(*Id.*)

### B. Procedural Background

On September 11, 2023, Plaintiff commenced this action in the Superior Court of New Jersey, Mercer County, alleging that Defendant engaged in discrimination, failure to accommodate, and retaliation in violation of the New Jersey Law against Discrimination, N.J.S.A. 10:5-1 *et seq.*, ("NJLAD").[1]  (ECF No. 1-1.)  Defendant removed the matter to this Court on October 27, 2023.  (ECF No. 1.)  Defendant submitted a pre-motion letter ("Pre-Motion Letter") setting forth its basis for its Motion to Compel Mediation and Arbitration.  (ECF No. 5).  Upon reviewing the Pre-Motion Letter, the Court ordered the parties to proceed with limited discovery as related to Defendant's anticipated motion regarding the Arbitration Agreement ("Phase I Discovery").[2]  (Pre-Trial Scheduling Order, ECF No. 12.)  On July 19, 2024, the parties submitted a joint status letter regarding the completion of Phase I Discovery and requested that the Court administratively reopen the case to allow Defendant to file the instant motion.  (ECF No. 19).  The Court administratively reopened the case, and Defendant filed the instant Motion to Compel Arbitration and to Stay the Proceedings.  (ECF No. 20.)  Plaintiff opposed, filed a Cross-Motion for Attorney's Fees (ECF No. 25), and Defendant replied (ECF No. 28).  Plaintiff filed a sur-reply with leave of Court.  (ECF No. 32.)

---

[1] It is unknown based on this record whether Plaintiff's employment agreement contains a choice of law provision. The Complaint asserts claims under NJLAD and the parties' briefing assumes that New Jersey law is applicable to their dispute.  Accordingly, the Court applies New Jersey law for the purposes of this decision.

[2] The Court notes that the Third Circuit has since issued additional guidance as to when discovery is appropriate in the context of a motion to compel arbitration.  *See Young v. Experian Info. Sol'ns.*, 119 F.4th 314 (3d Cir. 2024).

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332 because the parties are diverse, and the value of their dispute exceeds $75,000.

## III. LEGAL STANDARD

Before reaching the question of whether to compel arbitration, courts must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). If the face of the complaint and documents relied on in the complaint clearly demonstrate that the parties agreed to an enforceable arbitration clause, the Court will apply a "Rule 12(b)(6) standard without discovery's delay." *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, L.L.C. v. United Capital Lenders, L.L.C.*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)). But the 12(b)(6) standard should not be employed where the complaint is insufficiently clear to establish an enforceable agreement to arbitrate or where the opposing party has "come forth with reliable evidence . . . that it did not intend to be bound by the arbitration agreement." *Id.* at 774 (quoting *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)). Rather, in these scenarios, the court must permit the parties to engage in limited discovery as to the existence of an enforceable arbitration agreement; following such discovery, the "court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

Here, Plaintiff challenges the enforceability of the Arbitration Agreement on a number of grounds and disputes whether there was mutual assent in executing the Arbitration Agreement. Accordingly, the Court proceeds by analyzing the Motion under the Rule 56 standard of review. *Guidotti*, 716 F.3d at 776; *Young v. Experian Info. Sol'ns.*, 119 F.4th 314 (3d Cir. 2024).

## IV.     DISCUSSION

The Federal Arbitration Act ("FAA") dictates that written arbitration agreements entered into in connection with "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. When parties seek to enforce an arbitration agreement, they may request from the court "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Accordingly, the FAA grants courts the power to compel arbitration and to stay or dismiss claims subject to a valid arbitration agreement. 9 U.S.C. § 3. Specifically, the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues . . . to which an arbitration agreement" applies. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This mandate that courts "rigorously enforce agreements to arbitrate" stems from the legislative intent which drove the enactment of the FAA; specifically, Congress enacted the FAA to establish a strong federal policy in support of private arbitration agreements. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Whitter Reynolds, Inc.*, 470 U.S. at 221).

When presented with a motion to compel arbitration, a district court must affirmatively answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). To determine whether a valid arbitration agreement exists, courts apply applicable state contract law. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). In "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'"

5

*Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Plaintiff contends that the parties did not enter into a valid agreement and argues that the Arbitration Agreement is unconscionable and therefore unenforceable. Plaintiff argues that the Arbitration Agreement is unenforceable because it fails to explain to employees that they are waiving their right to seek relief in court or how arbitration differs from a suit in a court of law. (Opp'n Br. at 18–20.) Plaintiff further argues that it is procedurally and substantively unconscionable. (*Id.* at 21.)

The Court will address each argument in turn.

### A.     WHETHER THE ARBITRATION AGREEMENT IS ENFORCEABLE

"[W]hen a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver 'must be clearly and unmistakably established.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 314 (N.J. 2014) (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 77 A.2d 665, 670 (N.J. 2001)). Therefore, a "clause depriving a citizen of access to the courts should clearly state its purpose." *Id.* (quoting *Marchak v. Claridge Commons, Inc.*, 633 A.3d 531 (N.J.1993)). "Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer." *Id.* The language of the arbitration clause "must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 315.

Here, the document is clearly entitled "**DISPUTE RESOLUTION POLICY (For All Employees).**" (ECF No 20-4 at 1, Ex. B) (emphasis in original). Its two introductory paragraphs

6

are relatively straightforward with respect to requiring that mediation and arbitration be used to resolve disputes with MSXI's employees,

> Differences occasionally arise between the Company and a current or former employee. In most instances, these differences have been resolved through the Company's Employee Issue Resolution procedure or through informal discussions. However, in those rare instances where informal discussions and the Company's internal procedures do not produce a satisfactory result, litigation has been the only recourse to resolve the matter. Unfortunately, the litigation process is costly to all parties and is most time consuming. The Company believes there is a better and more efficient method to resolve those disputes that cannot be resolved informally. That method is a two-step dispute resolution mechanism of mediation and arbitration which are independent, fair and equitable to all parties.
>
> Under this policy, which is a condition of continued employment and binding upon the Company and the employee, all claims and disputes a current or former nonrepresented employee within the United States might have arising out of the employee's employment or termination, which are not resolved through the Company's Employee Issue Resolution procedure and other normal human resources channels, shall be resolved through mediation and, if necessary, binding arbitration. The mediation and arbitration will be conducted by a neutral third party, the American Arbitration Association.

(*Id*.)

This is reenforced in a later section entitled "**CLAIMS COVERED BY THE POLICY**" which informs employees of the types of claims they are agreeing to "submit to mediation and arbitration,"

> The disputes covered by this policy include any claim under applicable State or Federal law a current or former employee within the United States might have against the Company including, for example, all claims for: wages or other compensation due; breach of any contract; negligence; intentional torts; any alleged exception to the workers' compensation laws; defamation; *all forms of unlawful discrimination* including, but not limited to race, color, sex, religion, national origin, disability, marital status, protected physical characteristics, or age; denial of fringe benefits; *violation of any Federal, State or other governmental law, statute, regulation or ordinance; and, any other matters arising under common or*

7

> *statutory law*. . . . It is the intent to submit to mediation and arbitration to the fullest extent permitted by law all disputes an employee might have against the Company and any of its subsidiaries, divisions, affiliates, officers, directors, employees, and agents.

(*Id.*) (emphasis added).

Upon review, the Court finds that the Dispute Resolution provisions contain clear and unambiguous language that employees are waiving their right to sue or go to court to secure relief. The Arbitration Agreement's introductory paragraph explains, in language that is understandable to the "reasonable consumer," *Atalese*, 99 A.3d at 314, how MSXI handles disputes with its employees, first through an internal and informal process and then through "a two-step dispute resolution mechanism of mediation and arbitration." (ECF No 20-4 at 1, Ex. B.)  In doing so, the provision explains that this process is "better and more efficient" than the "litigation process [which] is costly to all parties and more time consuming."[3] (*Id.*)  The Court finds that this language, coupled with the covered claims provision, conveys in "at least" a "general and sufficiently broad way" that employees are giving up their right to bring claims in court and "agree[ing] to arbitrate all statutory claims arising out of the employment relationship or its termination." *Atalese*, 99 A.3d at 315–16.

### B.   WHETHER THE ARBITRATION AGREEMENT IS UNCONSCIONABLE

Plaintiff contends that the arbitration provision is both procedurally and substantively unconscionable. "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement . . . ." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).  An agreement is procedurally unconscionable if it was formed under unfair

---

[3] The "ARBITRATION" provision of the Dispute Resolution Policy also reenforces that the parties' arbitration will be final and binding (therefore precluding a separate suit in court by an employee) insofar as it states that: "the dispute shall be resolved by exclusive, final, and binding arbitration by the AAA before a single, neutral arbitrator . . . whose decision shall be final and binding upon the Company and the employee."

8

circumstances, taking into consideration facts such as "lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Bourgeois v. Nordstrom, Inc.*, Civ. No. 11-2442, 2012 WL 42917, at * 6 (D.N.J. Jan. 9, 2012) (quoting *Sitogum Holdings Inc., v. Ropes*, 800 A.2d 915 (N.J. Sup. Ct. Ch. Div. 2002)).

The Supreme Court of New Jersey has recognized that "adhesion agreements necessarily involve indicia of procedural unconscionability." *Muhammad v. Cty. Bank of Rehoboth Beach, Delaware*, 912 A.2d 88, 97 (N.J. 2006) (citing *Rudbart v. North Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 685–86 (N.J. 1992), *cert. denied*, 506 U.S. 871 (1992)). And there is no dispute here that the Arbitration Agreement is a contract of adhesion. *See Martindale v. Sandvik Inc.*, 800 A.2d 872, 880 (N.J. 2002) ("A contract of adhesion, simply put, is a contract 'presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity of the 'adhering' party to negotiate except perhaps of a few particulars.'") (quoting *Rudbart*, 605 A.2d at 685). That the contract is one of adhesion, though, is "the beginning, not the end of the inquiry," into whether a provision should be deemed unenforceable. *Muhammad,* 912 A.2d at 96–97.

Rather, "in determining whether to enforce the terms of a contract of adhesion," courts additionally consider the following four factors: "(1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract." *Id.* at 97 (quoting *Rudbart*, 605 A.2d at 687). These "factors focus on procedural *and* substantive aspects of the contract to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement.[4] *Rodriguez*, 138 A.3d at 542

---

[4] *See Hubbard v. Comcast Corp.*, Civ No. 18-16090, 2020 WL 4188127, at *7 n. 2 (D.N.J. July 21, 2020) (explaining that although the New Jersey Supreme Court has stressed that these factors encompass both procedural and substantive

9

(emphasis added). Importantly, "[c]ourts have generally applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). Therefore, given that adhesion contracts, like the one at issue here, "invariably evidence some characteristics of procedural unconscionability," the Court will focus on Plaintiff's substantive unconscionability arguments and conduct a more "careful fact-sensitive examination into substantive unconscionability." *Muhammad,* 912 A.2d at 97.

1. Procedural Unconscionability

In terms of procedural unconscionability, Plaintiff emphasizes the disparity in bargaining power and the degree of economic compulsion. (Opp'n Br. at 23-24.) Plaintiff contends that the circumstances surrounding the signing of the Arbitration Agreement made the process procedurally unconscionable by depriving him of any meaningful choice to consent to its terms. In considering Plaintiff's argument, we note that the New Jersey Supreme Court has explained that "[v]irtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Martindale*, 800 A.2d at 880. It is, therefore, clear that under New Jersey law, a disparity in bargaining power does not inherently create procedural unconscionability. *See, e.g.*, *Young v. The Prudential Ins. Co. of Am., Inc.*, 688 A.2d 1069, 1078 (N.J. Super. Ct. App. Div. 1996) (finding that unequal bargaining positions would not prohibit enforcement of an arbitration provision even when employees had "no bargaining power and no choice with respect to signing" the agreement). In addition, "the economic coercion of obtaining or keeping a job, without more, is insufficient to

---

unconscionability analyses, some decisions in this District have erroneously asserted that these four factors apply to the procedural unconscionability analysis only).

10

overcome an agreement to arbitrate statutory claims." *Quigley v. KPMG Peat Marwick, LLP,* 749 A.2d 405, 412 (N.J. Super. Ct. App. Div. 2000). Therefore, the Court finds that the Arbitration Agreement does not involve overwhelming procedural unconscionability and instead concludes that the unconscionability issue in this matter centers on the substance of its terms.

        2.    <u>Substantive Unconscionability</u>

Plaintiff contends that the Arbitration Agreement is substantively unconscionable as against public interests due to its: (1) one-year statute of limitations, (2) confidentiality provision, (3) discovery limitations, and (4) cost-shifting provision. (Opp'n Br. at 26-25.) "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris*, 183 F.3d at 181. "New Jersey courts may find a contract term substantively unconscionable if it is 'excessively disproportionate' and involves an 'exchange of obligations so one-sided as to shock the court's conscience.'" *Agrabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 481 (D.N.J. 2017) (quoting *Delta Funding Corp.*, 189 N.J. at 55, 912 A.2d 104). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum . . . .'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007)).

        a)    <u>**One-Year Statute of Limitations**</u>

Plaintiff argues that the Arbitration Agreement's time-limitation provision that mandates "initiation of arbitration within one year of the time the claim occurred" violates NJLAD and New Jersey case law. (Opp'n Br. at 26.) Defendant contends that this "argument is inapposite to New Jersey law," and relies on *Pyo v. Wicked Fashions Inc.*, Civ No. 09-2422, 2010 WL 1380982, at *9 (D.N.J. March 31, 2010) in support. The Court agrees with Plaintiff.

11

In 2016, the New Jersey Supreme Court determined that an arbitration agreement provision requiring the filing of an employee's NJLAD claim within six months of its accrual was unenforceable under general contract principles as violative of NJLAD's public policy purpose. *Rodriguez v. Raymours Furniture Co.*, 138 A.2d 528, 541 (N.J. 2016) ("We hold that a private agreement that frustrates the LAD's public-purpose imperative by shortening the two-year limitations period for private LAD claims cannot be enforced."). Although the Court based its ruling in *Rodriguez* on the public policy underlying NJLAD, the Court also noted, however, that "courts may refuse to enforce contracts, or discrete contract provisions, that are unconscionable." *Id*. The Court then stated that if it had analyzed the time-limitation provision under the concept of unconscionability, it would have found the provision unconscionable under the fourth factor of the unconscionability test, that is, "the public interests affected by the contract." *Id.* at 542 (citing *Rudbart*, 605 A.2d at 687).[5]

Applying the holding and reasoning of *Rodriguez* to this case, the time-limitation provision in the Arbitration Agreement is unconscionable as against the public interest. The provision at issue states "to insure [sic] the timely resolution of disputes, employees must initiate arbitration within one year of the time the claim occurred. The failure to initiate arbitration within this one year period will forever bar any claim involving that dispute." (ECF No. 20-4, Ex. B.) This time-limitation provision prohibits the submission of disputes to arbitration after one year. In doing so, it "effectively eliminates claims" and substantially reduces the employee's "ability to protect itself" in comparison with NJLAD's two-year statute of limitations period. *Id.* at 539–40. The Court therefore finds it unconscionable. Defendant's reliance on *Pyo* is unpersuasive as it predates

---

[5] Thereafter, in 2018, the New Jersey Legislature amended NJLAD to incorporate the rule set forth in *Rodriguez*. Thus, section 12(a) of NJLAD states: "It shall be an unlawful employment practice to require employees or prospective employees to consent to a shortened statute of limitations or to waive any of the protections provided by the [NJLAD]." N.J.S.A 10:5-12(a).

*Rodriguez* as well as the 2018 amendments to NJLAD. Defendant additionally argues that the time-limitation provision does not contravene the legislature because it "does not waive Plaintiff's substantive or procedural rights" and cites a case in this District which held that NJLAD "did not restrict the use of an arbitral forum to pursue those claims." (Reply at 11.) Defendant's point is irrelevant as this is not a matter of waiving rights or an argument against arbitration as a proper forum.

The Court will therefore consider whether it can sever this unconscionable provision but first considers Plaintiff's other challenges to the Arbitration Agreement. *Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 214 (3d Cir. 2003) (explaining that severance of unenforceable provisions of a contract is appropriate where the provisions are not "an essential part of the agreed exchange").

### b) Confidentiality Provision

Plaintiff separately challenges the Arbitration Agreement's confidentiality provision on the basis that it is also against public policy. The provision states,

> [a]ll aspects of the arbitration, including the record, are confidential and not open to the public except to the extent both parties might otherwise agree in writing the record is necessary for any subsequent proceeding between the parties, or the record is necessary to respond to an order of a governmental agency or legal process.

(ECF No. 20-4, Ex. B.)

Defendant argues that the confidentiality provision does not violate public policy because it applies equally to Plaintiff and Defendant, and it does not "burden Plaintiff in the exercise of his procedural or substantive rights within the arbitration." (Reply at 12.) The Court agrees with Defendant.

The Third Circuit has determined that confidentiality provisions are acceptable where "[e]ach side has the same rights and restraints under those provisions." *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 280 (3d Cir. 2004). It further elaborated that "there is nothing

13

inherent in confidentiality itself that favors or burdens one party vis-a-vis the other in the dispute resolution process. Importantly, the confidentiality of the proceedings will not impede or burden in any way [the employee's] ability to obtain any relief to which she may be entitled." *Id.* Guided by the Third Circuit's analysis, the Court finds that the confidentiality provision here does not present any potential unfairness to either party and is not against public policy.

### c) Discovery Limitations

Third, Plaintiff argues that the Arbitration Agreement's discovery provision is unconscionable because, among other things, it entitles Plaintiff and Defendant to only one deposition. (Opp'n Br. at 34-35.) Defendant argues that Plaintiff fails to mention the second half of the provision, which states, "the arbitrator may grant, upon good cause shown, either party's request for discovery in addition to or limiting that expressly providing in this policy." (Reply at 13.) Indeed, Plaintiff himself points out that "Defendants have listed 8 witnesses" and "Plaintiff deposed two witnesses for the arbitration alone," demonstrating that the parties are not likely restricted to merely "one deposition." (Opp'n Br. at 35.)

An arbitration agreement may impose limitations on discovery where those limitations are not so severe as to deprive the parties of "a fair opportunity to present their claims." *Gilmer v. Interstat/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). "In particular, discovery limitations are not substantively unconscionable where the arbitrator has discretion to grant additional discovery and hearing time." *Hubbard*, 2020 WL 4188127, at *8. Although courts have differing views on whether such a restriction is unconscionable, at least one other court in this District has accepted a similar discovery provision, reasoning that the provision "authorizes the arbitrator to permit further discovery and that authorization is not tied to an impossibly high burden." *Falk v. Aetna Life Ins. Co.*, Civ. No. 19-434, 2019 WL 4143882, at *7 (D.N.J. Aug. 31, 2019).

14

Here, the Court finds that the discovery provision is not unconscionable as it is equally restrictive to all parties and allows for further discovery on a showing of good cause, which is comparable to the showing required to modify a discovery schedule in this court. *See* Fed. R. Civ. P. 16(b)(4); *Gethers v. PNC Bank*, 813 F. App'x 746, 750 (3d Cir. 2020).

### d)     Cost-shifting Provision

Fourth, and finally, Plaintiff argues that the Arbitration Agreement's cost-shifting provision is unconscionable. (Opp'n Br. at 35.) The cost-shifting provision provides that Defendant

> will pay ninety (90%) of the AAA's mediation administrative fees and ninety (90%) percent of the fees and expenses of the mediator; the employee will pay ten (10%) percent. The company will pay seventy-five (75%) percent of the AAA's arbitration administrative fees and seventy-five (75%) percent of the fees and expenses of the arbitrator, the employee will pay twenty-five (25%) percent.

(ECF No. 20-4 at 2, Ex. B.)

A party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Hall v. Treasure Bay Virgin Islands Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000)). To meet this burden, the Third Circuit has "consistently held that . . . a plaintiff must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs." *Id.* (citing *Parilla v. IAP Worldwide Serv.*, 368 F.3d 269, 283–85 (3d Cir. 2004) and *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268–69 (3d Cir. 2003)). "The mere existence of cost-splitting or cost-sharing provisions in an arbitration agreement does not satisfy this burden." *Shapiro v. Baker Taylor, Inc.*, Civ. No. 07-3153, 2009 WL 1617927, at *7 (D.N.J. June 9, 2009).

Plaintiff argues that his income dropped in the year following his termination and "imposing the added cost of arbitration on this family would pose a much greater burden than litigating this matter in court." (Opp'n Br. at 38.) In an attached declaration, Plaintiff provides the Court with his salary for the year following his termination as well as his wife's salary and their monthly expenses. (ECF No. 25-8.) The Court is sympathetic to what would no-doubt constitute an unwanted and substantial expense, but Plaintiff has not demonstrated that his portion of an arbitration would be so costly as to be "prohibitively expensive." *See Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003) ("A party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood."). As Defendant points out, the terms of the arbitration agreement are quite favorable to Plaintiff where Defendant would cover ninety percent of mediation costs and seventy-five percent of arbitration. The Court therefore finds that the cost-shifting provision is not unconscionable. *See Alexander v. Anthony Intern*, 341 F.3d 256, 268 (3d Cir. 2003) (finding an arbitration agreement substantively unconscionable that would require a losing party to pay all costs of arbitration estimated between $800 and $1,000 per day).

### C.   WHETHER THE TIME-LIMITATION PROVISION IS SEVERABLE

Given that the Court has determined that the time-limitation provision is unconscionable, it must consider whether to sever the provision from the broader Arbitration Agreement. "[W]here aspects of an agreement are unenforceable, 'a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 206 (3d Cir. 2010). Two lines of inquiry are relevant here: (1) "whether the unconscionable aspects of the employment arbitration agreement constitute an

essential part of the agreed exchange of promises between the parties"; and (2) "whether the unconscionability of the arbitration clause demonstrate a systematic effort to impose arbitration on an employee, not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id*. (citations omitted).

"Given that the essence of the Arbitration Agreement is to settle disputes through binding arbitration, and the Court does not find that the time-limitation provision demonstrates a "systematic effort to impose arbitration . . . as an inferior forum that works to the employer's advantage," *id.,* the Court concludes that the time-limitation provision can be severed "without disturbing the central goals of the agreement or the parties' mutual obligation to arbitrate," *Clymer v. Jetro Cash & Carry Enterprises, Inc.*, 334 F. Supp. 3d 683, 696-97 (E.D. Pa 2018); *see also Beery v. Quest Diagnostics*, 953 F. Supp. 2d 531, 543, 548 (D.N.J. 2013) (finding that a 90-day limitations period in the context of Title VII and EPA unenforceable but severable as it was not an essential term).

The Court will therefore sever the time-limitation provision and enforce the remainder of the Arbitration Agreement.

### D.   SCOPE OF THE ARBITRATION AGREEMENT

Having decided that the remainder of the Arbitration Agreement is valid, the Court additionally determines that Plaintiff's NJLAD claims are within the scope of the agreement. In determining whether a particular dispute falls within a valid arbitration agreement's scope, the Court notes that "there is a presumption of arbitrability" and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co*

*v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009) (quoting AT *& T Techs. Inc. v. Comm'n Workers,* 475 U.S. 643, 650 (1986)).

Defendant argues that all of Plaintiff's underlying claims are covered by the Arbitration Agreement. (Motion at 17.) Plaintiff denies that his claims are subject to mediation but does not substantively dispute that the Arbitration Agreement encompasses them. (Opp'n Br. at 3.) The Arbitration Agreement at issue plainly states that it covers all claims a current or former employee might have arising out of the employee's employment or termination with Defendant and specifies that this includes "all forms of unlawful discrimination," "violation of any Federal, State or other governmental law, statute, regulation or ordinance," and "any other matters arising under common or statutory law." (ECF No. 20-4, Ex. B, 1.) The Court finds that the Arbitration Agreement covers statutory claims and sufficiently references employment discrimination as a category of statutory claims waived by the provision. *See Moon v. Breathless Inc.*, 868 F.3d 209, 214 (3d Cir. 2017 (explaining that an arbitration clause should "reflect the employee's general understanding of the type of claims in the waiver, e.g., workplace discrimination claims"). The Court therefore finds that the Arbitration Agreement covers Plaintiff's underlying claims and Plaintiff may be compelled to proceed in arbitration.

### E.      PLAINTIFF'S CROSS-MOTION FOR ATTORNEY'S FEES

Finally, by his cross-motion, Plaintiff seeks leave to apply for attorney's fees and costs should he prevail on the arbitration issue. (Opp'n Br. at 38–39; Sur-reply at 3.) Insofar as Plaintiff has not prevailed on the arbitration issue, that request will be DENIED.[6]

---

[6] Even if Plaintiff had defeated the current motion to compel, the Court has doubts that he would be entitled to fees under NJLAD. A prevailing party under NJLAD is a party who succeeds "on any significant issue in litigation [that] achieves some of the benefit the parties sought in bringing suit." *Szczepanski v. Newcomb Med. Center,* 661 A.2d 1232, 1237 (N.J. 1995) (citation omitted). Plaintiff would not have arguably achieved any benefit for which he filed this suit. There is also the matter of finality. A prevailing plaintiff must demonstrate the existence of a causal nexus between the litigation and relief granted, that the relief had basis in law, and that an enforceable *judgment* was issued against the defendant. *Davidson v. Roselle Park Soccer Federation,* 700 *A.*2d 900, 902–3 (N.J. Super. Ct. Ch. Div.

## V.     CONCLUSION

For the reasons stated above, the Court will GRANT Defendant's Motion to Compel Arbitration and Stay Proceedings and DENY Plaintiff's Cross-Motion for Fees. The Court will sever the time-limitation provision of the parties' Arbitration Agreement, order the parties to arbitration, and stay this case pending arbitration. An appropriate Order will follow.

Date: March 31, 2025

                                                                                 s/ Zahid N. Quraishi
                                                                                **ZAHID N. QURAISHI**
                                                                                 **UNITED STATES DISTRICT JUDGE**

---

1996) (citation omitted) (emphasis added). Here, the motion would not have resulted in an enforceable judgment against Defendant.